```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/1/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FREDDIE KNIGHT, DIN #18A429              :
                           Plaintiff,:          1:19-cv-04022-GHW
                                             :
        -against-                            :
                                             :
THE CITY OF NEW YORK and DOCTOR  :      MEMORANDUM OPINION
AZMAT HASAN OF CORRECTIONAL      :              AND ORDER
HEALTH SERVICES,                        :
                              Defendants.:
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

    *Pro se* plaintiff Freddie Knight felt an excruciating pain in his left knee while incarcerated by Defendant the City of New York (the "City") on Rikers Island. Plaintiff was examined by Defendant Azmat Hasan at the medical clinic in his correctional facility. Dr. Hasan conducted a physical examination of Plaintiff and ordered that he receive an x-ray on his knee to identify the source of his pain. A doctor performed an x-ray on Plaintiff's knee less than one week later; the x-ray showed that the cause of the pain was a Baker's cyst. Plaintiff alleges that the doctor ordered that he receive surgery on the knee if its condition did not improve. However, approximately one month after he was first examined by Dr. Hasan, Plaintiff was allegedly transferred out of the City's custody and into a New York state correctional facility. More than nine months later, Plaintiff still had not received surgery and was still experiencing severe pain in his knee.

    In this action, Plaintiff alleges Defendants were deliberately indifferent to his medical needs, in violation of the Eighth and Fourteenth Amendments. Because Plaintiff has not adequately alleged that Dr. Hasan deprived him of adequate medical care or that his constitutional rights were violated as the result of a municipal policy or custom, Defendants' motion to dismiss is GRANTED.

I. BACKGROUND

    A. Facts[1]

At the outset, the Court notes that while Plaintiff has presented a relatively lengthy factual narrative—which is supplemented by medical records attached to his opposition to this motion to dismiss—Plaintiff has chosen to name only two defendants in this case: Dr. Hasan and the City. Thus, although the Court recounts all of Plaintiff's factual allegations as background in this opinion, the Court's analysis of Plaintiff's claims ultimately centers on his allegations against Defendants.

On or around August 6, 2018, Plaintiff—who was incarcerated in the Anna M. Kross Correctional Facility ("AMKC") on Rikers Island—alleges that he felt an "excruciating pain" in his left knee. Compl. ¶ 1. Although Plaintiff alleges that he had experienced some pain in his knee in prior weeks, the complaint alleges that the pain intensified in early August. *Id.* Plaintiff alleges that his knee was visibly swollen and that he experienced pain walking. Opp. at 16; *see also id.* at 11 (alleging that Plaintiff had "extreme pain" in his left knee and that there was a "big lump" on his knee).

Plaintiff alleges that he visited the AMKC clinic and was examined by Dr. Azmat Hasan. Compl. ¶ 2. Plaintiff has attached medical records to his opposition, which indicate that he was examined by Dr. Hasan on October 5, 2018. Opp. at 22. The record of the visit states that Plaintiff

---

[1] These facts are drawn from Plaintiff's complaint ("Compl."), Dkt No. 2, and are accepted as true for the purposes of this motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Some of the facts are also drawn from Plaintiff's opposition. *See* Memorandum in Opposition to Defendant's Motion to Dismiss ("Opp."), Dkt, No. 29. "Because [Plaintiff] is proceeding *pro se*, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). However, while the Court must accept the facts as alleged in the complaint, "[w]hen allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002) (citation omitted).

told Dr. Hasan that he had been experiencing pain in his knee for a few months prior to the visit. *Id.* The record also indicates that Plaintiff had a limited range of motion in his left knee. *Id.* The record states that Dr. Hasan took Plaintiff's vital signs and performed a general medical examination. *Id.* In addition, the record indicates that Plaintiff was "already on Tylenol" at the time of the visit. *Id.* at 23. Finally, the record states that Dr. Hasan ordered that x-rays be performed on Plaintiff's left knee. *Id.*

In his opposition, Plaintiff alleges that Dr. Hasan told him he was experiencing pain in his knee because he was overweight. Opp. at 16; *see also id.* at 22 (medical record stating that Plaintiff was "obese" when he was examined by Dr. Hasan). Plaintiff alleges that he told Dr. Hasan that it was unlikely that the pain resulted from his weight because he had been heavier earlier in his life and, indeed, that he had lost weight since he had been incarcerated. *Id.* at 16. Plaintiff also alleges he urged Dr. Hasan to take x-rays to check for blood clots or other problems in his knee. *Id.* However, the complaint alleges that Dr. Hasan "rudely" told Plaintiff that there was nothing wrong with him. Compl. ¶ 2. Plaintiff alleges that during the same visit, Dr. Hasan chastised Plaintiff for questioning his medical judgment. Opp. at 16. Dr. Hasan also allegedly made threats about having him "put . . . in the box," apparently referring to placing Plaintiff in solitary confinement in the AMKC Special Housing Unit ("SHU"). *Id.* Plaintiff alleges that he disagreed with Dr. Hasan's assessment but had no choice but to accept it and leave the clinic. *Id.* at 22.

Because Plaintiff's knee was still in pain, he submitted another request to be seen by a physician. Compl. ¶ 2. In his opposition, Plaintiff alleges that medical staff who examined him during this second visit to the AMKC clinic were reluctant to contradict Dr. Hasan's initial assessment. Opp. at 16. Plaintiff's opposition does not present any record associated with his second visit.

3

The medical records attached to Plaintiff's opposition show that he again visited the AMKC clinic on October 9, 2018 and that he was examined by Doctor Mauricio Silva. *Id.* at 27; *see also* Compl. ¶ 4. The record notes that Plaintiff had been complaining of left knee pain for two months and that during these two months, Plaintiff had a "posterior lump" on his left knee and that the knee was swollen. Opp. at 27. During the October 9, 2018 visit, Dr. Silva diagnosed Plaintiff with a Baker's cyst. *Id.* at 32. Plaintiff was prescribed "Tylenol with Codeine," also known as "Tylenol 3," for the pain in his knee. *Id.* at 31. Plaintiff alleges that Tylenol is a blood thinner and that he should not have been prescribed Tylenol because he has been diagnosed with high blood pressure. *Id.*; *see also* Opp. at 17 (arguing that Plaintiff should not have been prescribed Tylenol because it "is a blood thinner" which is "counter-productive" to the medication Plaintiff takes for high blood pressure). *But see id.* at 23 (medical record from Plaintiff's initial visit with Dr. Hasan stating that he was "already on Tylenol"). In his complaint, Plaintiff alleges that Dr. Silva feared that he might have a major blood clot in his left knee, so Dr. Silva referred Plaintiff to Bellevue Hospital ("Bellevue"). Compl. ¶ 4. The medical records attached to Plaintiff's opposition confirm he was transferred to Bellevue for a "3 [h]our [h]ospital [r]un" after his October 9, 2018 visit. Opp. at 32.

Plaintiff alleges that during his first "NYCDOC-Bellevue Hospital visit," a medical professional conducted a sonogram on his knee. Compl. ¶ 5; *see also* Opp. at 12. In his opposition, Plaintiff alleges that the sonogram revealed that he did not have a blood clot in his knee but confirmed that his pain was the result of a Baker's cyst. Opp. at 12. Plaintiff alleges that a member of the Bellevue staff gave him a brace to wear on his knee. *Id.* Plaintiff also alleges that the doctors at Bellevue informed him that he should tell a doctor at AKMC if the swelling did not subside so that he could make an appointment to return to Bellevue to have surgery to drain excess fluid from his knee. *Id.* Elsewhere in his opposition, Plaintiff alleges that he was admitted to Bellevue overnight and that hospital staff performed a series of x-rays on his left knee to check for blood

4

clots. *Id.* at 17. Like the sonogram, the x-rays confirmed that Plaintiff did not have a blood clot in his knee. *Id.* However, the x-rays also confirmed that he had a Baker's cyst forming in his knee, which was the cause of the pain and inflammation. *Id.*

Plaintiff's medical records indicate that he returned to AMKC on October 10, 2018. *Id.* at 33. The medical record generated by Dr. Silva upon Plaintiff's return noted that the "[r]eason for [Plaintiff's] visit" was a "painful Baker's cyst" in his left knee. *Id.* Plaintiff was also diagnosed with "[d]iverticulosis of [his] large intestine without perforation or abscess with bleeding." *Id.* at 35. As treatment for his Baker's cyst, Plaintiff was prescribed oral medications for seven days, for pain control and was "referred to Orthopedics from Bellevue." *Id.*

Plaintiff's medical records show that he again visited the AMKC clinic on October 23, 2018. *Id.* at 42. Doctor Joon Park examined Plaintiff and noted that he complained of "swelling and pain" in his left knee because of the Baker's cyst. *Id.* Dr. Park again prescribed Plaintiff oral medication for seven days and prescribed the use of a cane to assist Plaintiff with walking. *Id.* at 43; *see also id.* at 37.

Plaintiff's medical records show that he visited the AMKC clinic again the next day on October 24, 2018. *Id.* at 44. He was examined by Physician's Assistant ("PA") Aksana Suleymanov. *Id.* The record of the October 24, 2018 visit notes that Plaintiff still complained of pain in his left knee.

Plaintiff's medical records show that he visited the AMKC clinic yet again just two days later on October 26, 2018—his third visit in four days. *Id.* at 24-26. He was examined by Physician's Assistants Terry Gravesande and Larry Blackmore. *Id.* The record of the visit notes that Plaintiff had been diagnosed with a Baker's cyst in his left knee via a "duplex sonogram[.]" *Id.* at 25; *see also* Compl. ¶ 5 ("During that first NYC-DOC Bellevue Hospital visit, a sonogram was conducted on

the area of concern[.]"). The medical records also indicate that Plaintiff was referred to the rheumatology department at Bellevue. Opp. at 26.

In his opposition, Plaintiff alleges that at an unspecified time, a "Dr. Silverman"[2] told him that he had made an appointment for Plaintiff to return to Bellevue to have surgery on his knee. *Id.* at 13. Plaintiff did not receive surgery on his knee, however. Instead of returning Plaintiff to Bellevue for surgery, Plaintiff alleges that the New York City Department of Corrections transferred him from AMKC on Riker's Island to the Downstate Correctional Facility ("DCF") on November 9, 2018, which Plaintiff alleges is part of the New York State correctional system. *Id.*; *see also* Compl. ¶ 7. Plaintiff does not explain why he was transferred. Plaintiff alleges that he was shackled during the three-hour ride to DCF and that the shackles caused "extreme pain" in his knee during the ride. Opp. at 13.

When he arrived at DCF, Plaintiff alleges that he informed the medical staff at the facility that he was in pain and informed them that he had been scheduled to have surgery while housed on Rikers Island. *Id.* Plaintiff alleges that he was examined by a nurse who prescribed pain medication and told him that he needed to see a doctor. *Id.* at 14. Plaintiff alleges that he again saw a nurse at DCF and attempted to persuade her to contact the medical staff at AMKC or Bellevue to confirm that he required surgery on his knee, but that she did not do so. *Id.* Plaintiff alleges that he was examined by a nurse for a third time at DCF, who informed him that he would need to see a doctor at DCF to receive treatment. *Id.*

At some point before he commenced this action in May 2019, Plaintiff was apparently transferred from DCF to Riverview Correctional Facility ("RCF"). *See* Opp. at 16. As of at least

---

[2] The Court observes that the doctor Plaintiff refers to as "Dr. Silverman" in his opposition may be the doctor identified in Plaintiff's complaint and in his medical records as Dr. Silva. Elsewhere in his opposition, Plaintiff alleges that a "Dr. Silver" examined his knee during his third visit to the AMKC clinic. *Id.* at 22. The complaint alleges that Dr. Silva examined Plaintiff on his third visit to the AMKC clinic. Compl. ¶ 4. It is not material to the Court's analysis whether Dr. Silva is the same person as "Dr. Silverman" or "Dr. Silver."

6

August 5, 2019, Plaintiff was still incarcerated at RCF and alleges that his medical needs were "still not being met[.]" *Id.* Plaintiff alleges that "[t]he medical staff at Rikers Island should have placed [him] on a medical hold until the operation was successfully completed before allowing [him] to be moved to [DCF]" and that though he explained his medical problems to the medical staff at DCF, they did nothing to alleviate the pain in his knee. *Id.* at 17.

### B. Procedural History

Plaintiff commenced this action on May 3, 2019. Dkt No. 2. Plaintiff's complaint alleges violations of his Eighth and Fourteenth Amendment rights and names Dr. Hasan and the City as defendants. Compl. at 1-2. Because Plaintiff is proceeding *pro se*, the Court also construes his complaint to raise a state law cause of action for negligence against Dr. Hasan and a claim for *respondeat superior* liability as a result of Dr. Hasan's negligence against the City. Defendants filed this motion to dismiss on September 18, 2019. Dkt No. 22-24. Plaintiff subsequently filed an opposition to Defendants' motion, Dkt. No. 29, and Defendants filed a reply. Dkt. No. 30.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to meet this pleading standard, a defendant may move to dismiss it for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"

7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe the allegations in his complaint and "interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quotation omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed[.]" (quotation omitted)); *Nielsen*, 746 F.3d at 63 ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests." (quotation omitted)). Nevertheless, "dismissal of a *pro se* complaint is appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

**III. DISCUSSION**

    **A. Deliberate Indifference Claim against Dr. Hasan**

        **1. Legal Standard**

Plaintiff asserts a cause of action under 42 U.S.C. § 1983 ("Section 1983") against the named defendants, Dr. Hasan and New York City. *See Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) ("Section 1983 provides a civil claim for damages against any person who, acting under color of

state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." (citations omitted)). To prevail on a claim under Section 1983, a plaintiff must show that the defendant "acted under color of state law and that [he] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

As an initial matter, the Court notes that it is unclear from the complaint whether Plaintiff had been convicted at the time of the events described in the complaint. The Eighth Amendment protects prisoners from "cruel and unusual punishments[.] U.S. Const. amend. VIII.[3] However, because "the Eighth Amendment's protection does not apply 'until after conviction and sentence,'" the amendment does not protect pretrial detainees. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)). Instead, "[a] pretrial detainee's claims . . . are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see also id.* ("A pretrial detainee's claims are evaluated under the Due Process Clause because pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.") (quotation and brackets omitted)).

Because it must draw all reasonable inferences in Plaintiff's favor, the Court will assume for purposes of this motion that Plaintiff was a pretrial detainee at the time Defendants allegedly violated his constitutional rights. "A detainee's rights are '*at least* as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)) (emphasis added). To the extent that Plaintiff's rights under the Eighth

---

[3] The Cruel and Unusual Punishments clause of the Eighth Amendment is "incorporated against the states by the Due Process Clause" of the Fourteenth Amendment. *Mercado v. City of New York*, No. 8 CIV. 2855(BSJ)(HP), 2011 WL 6057839, at *4 (S.D.N.Y. Dec. 5, 2011); *see also United States v. Georgia*, 546 U.S. 151, 157 (2006) (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion)).

and Fourteenth Amendment differ, his rights under the Fourteenth Amendment are at least as great under the Eighth Amendment.  Consequently, the Court will assume that Plaintiff was a pretrial detainee at the time of the events described in the complaint and apply the standard applicable to claims brought by pretrial detainees under the Fourteenth Amendment.

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement"—such as the denial of medical care—"by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29 (citation omitted).  "To state a claim for deliberate indifference to serious medical needs" under the Fourteenth Amendment, "a pretrial detainee must satisfy a two-pronged test[.]" *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017).  First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017) (quoting *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)). "Second, the defendant must act with a 'sufficiently culpable state of mind.'" *Davis*, 283 F. Supp. 3d at 116 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Darnell*, 849 F.3d at 29 ("[A] pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions.").[4]

"Determining whether a deprivation is an objectively serious deprivation" as required by the first prong "entails two inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  The first is "whether the prisoner was actually deprived of adequate medical care." *Id.*  "As the Supreme Court

---

[4] The analysis under the objective prong "is the same" for convicted prisoners and pretrial detainees.  *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019); *see also Darnell*, 849 F.3d at 29.

has noted, the prison official's duty is only to provide reasonable care." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 844-47 (1994)). "Only 'deprivations denying the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Thus, 'prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause,' and, conversely, failing 'to take reasonable measures' in response to a medical condition can lead to liability." *Id.* at 279-80 (quoting *Farmer*, 511 U.S. at 845, 847) (brackets omitted).

The second inquiry under the objective prong is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. "This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). "For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* (citation omitted). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)) (brackets omitted). "In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Id.* "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (quotation and brackets omitted).

Allegations of negligence are insufficient to state a claim for deliberate indifference. A plaintiff must allege "something more than mere negligence" to allege a deliberate indifference claim

11

and "mere medical malpractice is not tantamount to deliberate indifference[.]" *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019) (quotations omitted). Relatedly, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703 (citation omitted).

### 2. Application

Plaintiff has not alleged that Dr. Hasan deprived him of adequate medical care. The Court again stresses that because Plaintiff has chosen to name only Dr. Hasan and the City as defendants in this case, the Court's analysis here focuses only on the allegations against those defendants. Plaintiff's allegations against Dr. Hasan are not extensive. Plaintiff alleges that Dr. Hasan examined him only once, on October 5, 2018. During that interaction, Plaintiff alleges that Dr. Hasan was rude to him and told him that there was nothing wrong with him. The allegation that Dr. Hasan was rude to Plaintiff is only tangentially relevant—if at all—to whether Plaintiff has alleged that he was actually deprived of adequate medical care. Similarly, the allegation that Dr. Hasan threatened to put Plaintiff "in . . . the box"—though troubling—is minimally relevant to the inquiry of whether Plaintiff was actually deprived of adequate medical care. Opp. at 16. Neither of these allegations substantially advances an argument that Plaintiff was deprived of the "minimal civilized measure of life's necessities'[.]" *Salahuddin*, 467 F.3d at 279 (quotation omitted).

The allegation that Dr. Hasan told Plaintiff that there was nothing wrong with him is closer to an allegation that Plaintiff was deprived of adequate medical care but still falls short of the mark. At most, this is an allegation that Dr. Hasan negligently failed to diagnose Plaintiff with a Baker's cyst. However, a plaintiff must allege "something more than mere negligence" to maintain a deliberate indifference claim. *Charles*, 925 F.3d at 87. Therefore, Plaintiff has failed to meet his burden to plausibly allege a claim for deliberate indifference.

Furthermore, while the Court does not decide the issue, Plaintiff's medical records cast doubt on the argument that Dr. Hasan acted negligently. Plaintiff's medical records show that Dr. Hasan examined Plaintiff on October 5, 2019 and ordered an x-ray of his left knee to determine what was causing Plaintiff's pain. Plaintiff received an x-ray on his knee that confirmed that the source of his pain was a Baker's cyst on October 9, 2019—just four days later. Although the Court need not decide this issue, Plaintiff's medical records suggest that Dr. Hasan may have acted reasonably in treating Plaintiff.

Even if Plaintiff's allegations were sufficient to allege that Plaintiff was deprived of adequate medical care, there is also a substantial question whether the alleged inadequacy in Plaintiff's medical care was sufficiently serious to state a claim for deliberate indifference against Dr. Hasan. Plaintiff has alleged that there was a delay of, at most, four days between when he was examined by Dr. Hasan and when he was examined by a different doctor.[5] Plaintiff has not alleged that Dr. Hasan was responsible for his transfer to DCF, nor is it a reasonable inference based on the facts alleged in the complaint that Dr. Hasan was responsible for that fact that Plaintiff was not treated after he was transferred to DCF. Plaintiff alleges that he saw at least one other doctor, Dr. Silva, between the time he was treated by Dr. Hasan and the time he was transferred to DCF and multiple nurses at DCF after his transfer. Thus, although Plaintiff alleges that he did not receive treatment for the pain in his knee for an extended period even after he was diagnosed with a Baker's cyst, Plaintiff has not adequately alleged that Dr. Hasan is responsible for most of that delay. Rather, Dr. Hasan is responsible for a delay of four days at most. Given Plaintiff's ultimate diagnosis, the Court is skeptical that a delay of four days amounted to a sufficiently serious denial of medical care.

---

[5] Plaintiff's medical records show that he was examined by Dr. Hasan on October 5, 2019 and Dr. Silva on October 9, 2019. Plaintiff alleges in his complaint that he visited the AMKC clinic between these two visits. *See* Compl. ¶ 2; Opp. at 16. However, Plaintiff does not specify in his complaint or his opposition whether he was examined by a doctor during this second visit.

13

However, because the Court need not take a position on this issue, it does not do so. Because Plaintiff has not alleged that Dr. Hasan deprived him of adequate medical care, his deliberate indifference claim against Dr. Hasan is dismissed.[6]

### B. *Monell* Claim against the City

#### 1. Legal Standard

Under Section 1983, municipalities are "not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted). Plaintiffs seeking to hold a municipality liable under Section 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

A plaintiff may satisfy the "policy or custom" prong in one of four ways: by alleging the existence of 1) a formal policy, *see Monell*, 436 U.S. at 690 ; 2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); 3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or 4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). Furthermore, "it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through

---

[6] Because Plaintiff has not adequately pleaded the objective prong of his deliberate indifference claim, the Court does not analyze whether Plaintiff's claim satisfies the *mens rea* prong.

its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. Of Cty. Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

### 2. Application

Plaintiff has not adequately pleaded that his constitutional rights were violated as a result of a municipal policy or custom. Plaintiff has not alleged the existence of a formal policy. Nor has Plaintiff alleged, even in conclusory fashion, that any official involved in the decision not to provide him with medical treatment was a final municipal policymaker. *See Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000) ("Where a plaintiff relies not on a formally declared or ratified policy, but rather on the theory that the conduct of a given official represents official policy, it is incumbent on the plaintiff to establish that element as a matter of law."). Plaintiff has also failed to allege that the facts alleged in his complaint and opposition were the result of a widespread practice. And Plaintiff has not alleged that his mistreatment was the result of a failure to train or supervise municipal employees.

Moreover, according to Plaintiff's allegations, the City was not responsible for most of the delay in his treatment. Plaintiff alleges that he was transferred from the City's correctional system into the New York state correctional system on November 9, 2018. *See* Compl. ¶ 7. As noted above, Plaintiff's medical records attached to his opposition state that he was first was examined by Dr. Hasan on October 5, 2018. Thus, the City was responsible for, at most, a delay of approximately one month in Plaintiff's treatment. This allegation further undercuts an inference that Plaintiff was injured as the result of a City policy. Accordingly, Plaintiff's claims against the City are dismissed.

### C. Supplemental Jurisdiction

The Court declines to exercise supplemental jurisdiction over any state law claims that Plaintiff's complaint could be read to raise. Although Plaintiff did not assert any state law claims in

his complaint, the Court must construe Plaintiff's complaint "liberally to raise the strongest claims it suggests." *Nielsen*, 746 F.3d at 63 (quotation omitted). As noted above, Plaintiff's complaint could be read to raise a state law negligence claim against Dr. Hasan and a claim for *respondeat superior* liability against the City based on Dr. Hasan's alleged negligence. However, to the extent that Plaintiff's complaint could be read to assert these and other state law claims, the Court declines to exercise supplemental jurisdiction over those claims.

When a district court has original jurisdiction over claims in a case, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III." *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" (quoting U.S. Const. art. III, § 2)). Claims are considered "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

16

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, subsection (3) applies because the Court has dismissed all the claims over which it had original jurisdiction. Therefore, the Court may exercise its discretion to decline supplemental jurisdiction over any remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted). Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Gibbs*, 383 U.S. at 726). "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) ("'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" (quotation omitted)). This is the usual case: the Court has evaluated the values articulated in *Gibbs* in the context of this case and has concluded that they support the Court's decision to decline supplemental jurisdiction. The Second Circuit counsels against exercising supplemental jurisdiction in this circumstance:

> Accordingly, because the Court has dismissed all of Plaintiff's claims based on a federal

17

question under 28 U.S.C. § 1331 and there is no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over any state law claims that the complaint may be construed to assert. *See* 28 U.S.C. § 1367(c)(3).

### D. Leave to Amend

The Court grants Plaintiff leave to amend his complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Plaintiff may wish to amend his complaint to name additional defendants, including John Doe defendants. *See Brogdon v. City of New York*, No. 16-CV-8076(LAK)(RWL), 2018 WL 4762981, at *18 n.82 (S.D.N.Y. Aug. 8, 2018) ("[N]aming a fictitious defendant is permissible when a plaintiff has not yet discovered the identity of the party[.]") (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 388 (1971)), *objections overruled*, No. 16-CV-8076 (LAK), 2018 WL 4757947 (S.D.N.Y. Oct. 1, 2018).

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, but Plaintiff is granted leave to replead. Any amended complaint must be filed no later than **thirty days** from the date of this order.

The Court directs that counsel for Defendant provide Plaintiff with copies of any unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to mail a copy of this order to Plaintiff and to terminate the

motion pending at Dkt No. 22.

     SO ORDERED.

Dated: May 1, 2020

                                            GREGORY H. WOODS
                                          United States District Judge